UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS FERNANDO JIMENEZ CERVANTES (A 098-269-771),<br>Petitioner,<br>v.<br>WARDEN,<br>Respondent. | No. 1:26-cv-02585-TLN-SCR<br><br><u>FINDINGS & RECOMMENDATIONS</u> |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The undersigned now finds that Petitioner's ongoing prolonged detention of 33 months violates substantive due process and recommends that he be released on conditions to mitigate any danger to the community he might otherwise pose.

**I. Factual and Procedural History**

Petitioner, a citizen of Mexico, entered the United States without inspection in 1998, when he was 11 years old. ECF No. 12 at 9. On March 21, 2006, Petitioner pled guilty to a violation of California Penal Code § 664-187(a), attempted murder, for which he was sentenced to 18 years in prison. ECF No. 9-2 at 4. He also pled guilty to possession of cocaine while in prison in 2011. <u>Id</u>. at 9. Because Petitioner's attempted murder conviction constituted an aggravated felony, U.S. Immigration and Customs Enforcement (ICE) issued a Final Administrative Removal Order

(FARO) against him on December 17, 2007.[1] ECF No. 9-3. When Petitioner completed his prison sentence on December 29, 2023, ICE took him into custody. ECF No. 9-1. Petitioner expressed a fear of torture and applied for withholding and deferral of removal pursuant to 8 U.S.C. 1231(b)(3) and the United Nations Convention Against Torture. ECF No. 9-5. An immigration judge denied Petitioner's applications for relief, and Petitioner appealed to the Board of Immigration Appeals (BIA), which dismissed his appeal. ECF No. 9-9; 9-10. Petitioner then filed a petition for review to the Ninth Circuit Court of Appeals, which granted a stay of removal on September 5, 2025. ECF No. 9-11. The petition for review remains pending and Petitioner remains detained at the California City Immigration Processing Center.

Petitioner has received one bond hearing. On June 28, 2024, an immigration judge held a bond hearing pursuant to Aleman-Gonzalez v. Barr, 955 F.3d 762 (9th Cir. 2020). The immigration judge denied bond, finding that the government met its burden to demonstrate that Petitioner poses a danger to the community and risk of flight. ECF No. 9-7. Petitioner appealed to the BIA, which dismissed the appeal as untimely. ECF No. 9-8.

On April 6, 2026, Petitioner filed a petition for writ of habeas corpus pro se, alleging that his prolonged detention violates the Due Process Clause of the Fifth Amendment. ECF No. 1. He also highlighted restrictive detention conditions, including lack of privacy and hot water in showers; frequent counts and searches that prevent him from accessing legal resources; inadequate food; lack of recreation time, with only one hour outside of dorm and no indoor recreation activities; and inability to access medical care. Id. Respondent replied that Petitioner's detention, though prolonged, remains lawful because Petitioner has not shown that removal is unlikely in the reasonably foreseeable future. ECF No. 9. After appointment of counsel, Petitioner submitted an amended petition raising a substantive due process claim. ECF No. 12.

**II. Statutory Immigration Framework**

The parties do not dispute that 8 U.S.C. § 1231(a)(6) governs Petitioner's detention. Section 1231(a) governs the detention of noncitizens after a final order of removal has been

[1] On December 8, 2023, ICE re-issued the FARO due to the passage of time.

issued. Detention is mandatory during the 90-day "removal period" following the entry of a final order of removal. See 8 U.S.C. § 1231(a)(1)-(2). Detention after the expiration of the removal period is governed by 8 U.S.C. § 1231(a)(6). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After the 90-day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [DHS] determines 'to be a risk to the community'; and (4) those [DHS] determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578-79 (quoting 8 U.SC. § 1231(a)(6)). After the 90-day removal period has expired, a noncitizen may request a review of whether there is a "significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). If it is determined that there is no significant likelihood of removal in the reasonably foreseeable future, the government "shall promptly make arrangements for the release of the [noncitizen] subject to appropriate conditions." 8 C.F.R. § 241.13(g)(1).

**III. Due Process Analysis**

The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). Petitioner alleges that his detention violates due process because it no longer serves its legitimate purported purpose of protecting the community and ensuring appearance at future immigration proceedings. Respondent countered that Petitioner's detention is not excessive in relation to its regulatory purpose and is necessary to protect the community and mitigate risk of flight.

"At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana,

406 U.S. 715, 738 (1972). In the context of pretrial detention, the Ninth Circuit has held that "[a] [substantive] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)). In the immigration context, "[d]ue process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk. Padilla v. U.S. Imm. and Customs Enforcement, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (citing Zadvydas v. Davis, 533 U.S. 678, 690-91 (2001)); see also Larios v. Wofford, No. 1:26-cv-1498 DJC CKD, 2026 WL 765019, at *5 (E.D. Cal. Mar. 18, 2026) (recognizing availability of substantive due process claims in the context of immigration detention).

The undersigned applies the following five-factor balancing test developed by Judge Pitts of the Northern District of California to evaluate whether a particular individual's ongoing immigration detention violates substantive due process: (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held. See Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024) ("Doe v. Becerra II"). Applying these Doe v. Becerra II factors, the undersigned concludes that Petitioner's current detention violates substantive due process.

**A. Length of Detention**

"[A]t some point, [civil] detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). "But while the existence of some threshold of per se due process violation may

be 'undisputed,' . . . it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) ("Doe v. Beccera I"). The Supreme Court deemed six months the presumptive limit of reasonable detention under § 1231(a)(6), after which a noncitizen may seek release upon a showing that removal is not likely to occur in the reasonably foreseeable future.[2] See Zadvydas, 533 U.S. 678. In the context of §1226(a) detention, the Ninth Circuit found that a particular non-citizen's detention of nearly three years was permissible so long as the noncitizen was afforded adequate procedural protections. See Prieto-Romero v. Clark, 534 F.3d. 1053 (9th Cir. 2008). Both Zadvydas and Prieto-Romero examined the statutory basis for prolonged detention and addressed the procedures required to protect the noncitizen's constitutional interests, but neither case squarely addressed the full range of circumstances in which substantive due process may be violated by lengthy periods of civil detention. To determine whether detention has violated substantive due process rights, courts in this and other districts have analogized immigrant detention to pre-trial detention in formulating a test to weigh the length of detention against its regulatory purpose:

> Ultimately, though, whether this prolonged detention is *excessive* and therefore punitive is a relative question. The duration of detention itself must be weighed against . . . the regulatory purposes for detention—preventing flight risk and protecting public safety. Whether the duration of detention is excessive depends in part on the degree of those risks and the extent to which [the petitioner's] detention mitigates them.

Doe v. Becerra II, 732 F. Supp. 3d at 1083 (emphasis in original); see also Torres, 995 F.3d at 708 ("The point at which detention constitutes a due process violation requires a case-by-case analysis.").

Petitioner's detention has lasted about 33 months, which is undoubtedly prolonged. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding Petitioner's seven month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical

[2] The parties dispute whether Petitioner has shown that removal is unlikely to occur in the reasonably foreseeable future. Because relief will be granted on other grounds, the undersigned need not address this dispute.

period described in Demore v. Kim, 538 U.S. 510 (2003)]" and "neither release nor removal are imminent"). The pending petition for review of the immigration judge's denial of relief from removal suggests that Petitioner "faces an undetermined, but likely significant, period of mandatory detention through the appeals process." Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025). But while severely prolonged, the current 33-month duration of Petitioner's detention, standing alone, may not violate substantive due process. See Torres, 995 F.3d at 699 (identifying the 21-months of pre-trial detention as "likely approaching the outer bounds of due process"). However, Petitioner has offered evidence that this duration is excessive in relation to its regulatory purpose, in that Petitioner is not a flight risk, any danger he poses can be mitigated by alternatives to detention, and the conditions of confinement are as restrictive as criminal incarceration.

**B. Government Contribution to Delay**

Relevant to this analysis is the parties' responsibility for "delays that have contributed to the duration of detention." Doe v. Becerra II, 732 F. Supp. 3d at 1083; see also United States v. Gelfuso, 838 F.2d 358, 359 (9th Cir. 1988) (the due process limit on the length of pretrial detention requires consideration of "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued"). The record does not indicate that either party is particularly responsible for delays contributing to Petitioner's lengthy detention. The matter is making its way through the judicial review process which, though lengthy, does not appear to have been delayed by any specific action by either party.

**C. Evidence of Flight Risk and Danger**

Determining whether Petitioner's prolonged detention has become punitive requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." Doe v. Becerra II, 732 F. Supp. 3d at 1086.

Though an IJ denied Petitioner's bond request "for reasons relating to both danger and flight" (ECF No. 9-7), the record does not indicate that Petitioner poses a risk of flight.

As to dangerousness, the undersigned finds that Petitioner's ongoing detention bears at least some relation to its statutory purpose of protecting the community. Petitioner entered a plea of guilty to attempted murder and received conviction enhancements for participation in a criminal street gang and the use of a dangerous or deadly weapon. ECF No. 9-2. However, Petitioner's criminal history is dated. The attempted murder occurred nearly 20 years ago and his only other conviction – possession of cocaine – occurred approximately 15 years ago. Petitioner left the gang he was affiliated with over ten years ago and now fears persecution from his former gang and others in his home country. ECF No. 9-5. He also obtained his GED and completed "numerous rehabilitative and educational programs" while incarcerated. ECF No. 12 at 12. At the same time, because Petitioner was arrested by ICE upon release from state prison, he has not yet had an opportunity to show his rehabilitation outside the prison walls. Given the recency of his release from criminal custody and the violent nature of his most serious conviction, the record is insufficient to demonstrate that Petitioner would not pose some danger to society if released without safeguards.

**D. Alternatives to Detention**

Relevant to assessing dangerousness to society is whether the government's interests in protecting the community and ensuring appearances for immigration proceedings could be protected through alternatives to detention that are less restrictive. Doe v. Becerra II, 732 F. Supp 3d at 1080.

To the extent Petitioner poses any risk of flight, there are routine and obvious conditions that ICE could impose, including check-ins with ICE officials and electronic monitoring. While the record does not contain evidence regarding the efficacy of GPS monitoring to mitigate *dangerousness*, the Court in Doe highlighted "studies from the criminal context suggesting that electronic monitoring can reduce recidivism" and opined that "someone who knows their location is being monitored will face at least some additional incentive not to engage in criminal conduct." Doe, 732 F. Supp 3d at 1088. Moreover, if released, Petitioner would be under the supervision of a parole officer, whose contact information he has provided to the Court, evidencing ability and willingness to comply with supervision orders. The availability of these alternatives to detention

greatly reduces the government's interest in detention for the purported purpose of protecting the community from danger.

**E. Conditions of Detention**

Substantive due process also imposes outer bounds on the conditions of civil immigration detention. Doe v. Becerra II, 732 F. Supp. 3d at 1080; Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) ("[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'"). Petitioner's allegations of restrictive conditions at the California City detention facility (hereinafter "CCDF") – which Respondent does not refute – comport with other courts' findings that conditions at CCDF are "not only inherently harsh but also worse than the conditions […] in state prison." Doe v. Chestnut, 810 F. Supp. 3d at 1201 (citing Doe v. Beccera II, 732 F. Supp. 3d at 1089).

Petitioner, who suffers from high blood pressure, states that his requests for medical care for lumps on his chest have been ignored and that he has lost weight while detained. In a class action against ICE alleging that conditions of confinement at CCDF violated noncitizen detainees' First and Fifth Amendment rights, Judge Chesney of the Northern District of California found that the facility "struggle[s] to deliver standard of care for common uncomplicated problems," let alone for "patients with complex medical care needs" and that "it is not safe to be sick" at CCDF. Gomez Ruiz v. U.S. Immigration and Customs Enforcement, 3:25-cv-09757-MMC, 2026 WL 851980, at *3 (N.D. Cal. March 27, 2026). Consistent with Petitioner's claim that CCDF has not addressed his requests for medical care, the intake process at CCDF was found to be "incomplete" and "haphazard." Id. Patients "are not seen within a reasonable time" and sick calls "describing urgent medical symptoms can go unaddressed or unacknowledged for days or weeks." Id. An expert investigation "revealed multiple instances of 'poor clinical judgment,' inadequate recordkeeping, and treatment that failed to comport with the prevailing standard of care." Id. See also Tigranyan v. Warden of California City Det., No. 1:25-CV-01554-DJC-SCR, 2026 WL 91765, at *6 (E.D. Cal. Jan. 13, 2026) (noting investigation and report by Disability Rights California finding that California City fails to provide necessary

medical and mental health care and fails to other meet basic needs), report and recommendation adopted, No. 1:25-CV-01554-DJC-SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026).

Petitioner's allegations of inadequate recreation time and conditions affecting his ability to fight his legal case also align with the findings of other courts. Daily counts and insufficient staffing at CCDF make it impracticable for attorneys to visit detainees as often as they typically would, and the no-contact nature of the visits "constitute[e] restrictive conditions under which attorneys have difficulty hearing and speaking to their clients." Gomez Ruiz, 2026 WL 851980, at *5. Detainees at CCDF are given at most one hour per day of outdoor recreation time, which is "less than prisoners in segregation are offered." Id.

Additionally, conditions at CCDF have been described as "abysmal," with "frigid" temperatures and water that "tast[ed] like bleach or detergent." Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1172 (E.D. Cal. 2025). While prisons routinely provide sweatshirts and sweatpants to inmates free of charge, CCDF does not do so for their immigrant detainees. Gomez Ruiz, 2026 WL 851980, at *8. The undersigned agrees that conditions at CCDF "are both excessive in relation to any non-punitive purpose and employed to achieve objectives that could be achieved by other, less harsh methods." Id.

**F. Conclusion as to Substantive Due Process Analysis**

On balance, the undersigned finds that Petitioner has established that his lengthy detention is excessive in relation to its regulatory purpose**.** Petitioner has spent nearly three years confined in conditions found to be more restrictive than criminal confinement, despite the availability of post-release monitoring that could mitigate any risk of danger Petitioner presents. Accordingly, the undersigned finds that Petitioner's detention has become punitive and recommends that the amended petition be granted on Count Two.[3]

**IV. Remedy**

The undersigned next turns to the appropriate remedy:

> Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in

[3] In the interests of judicial economy, the undersigned does not address Count One.

> conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 [] (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319[] (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 [] (1973) (footnote omitted).

Doe v. Chestnut, 810 F. Supp. 3d at 1202. The undersigned finds that appropriate remedy for this violation of substantive due process is release, but with safeguards to mitigate danger to the community. See id. (ordering release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); Zadvydas, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus be GRANTED on Count 2 (substantive due process) as follows:
    a. Respondent shall IMMEDIATELY RELEASE Petitioner Luis Fernando Jimenez Cervantes (A# 098-269-771) from custody. At the time of release, Respondent must return all of Petitioner's documents and possessions;
    b. Upon Petitioner's release, Respondent shall enroll Petitioner in ICE's Intensive Supervision Appearance Program (ISAP) and impose its standard flight-mitigation conditions. Respondent may impose additional conditions of release for the purpose of ensuring public safety so long as those terms, and consequences of violating those terms, are communicated to Petitioner and his counsel in writing in advance of imposition;
    c. Respondents may re-detain Petitioner: (1) if Petitioner violates the conditions of his release and Respondents provide Petitioner notice and an opportunity to be

heard as to the alleged violations, and (2) if Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal;

2. Petitioner's motion for temporary restraining order be DISMISSED as MOOT;
3. The Clerk be directed to:
    a. Serve the **California City Immigration Processing Center** with a copy of this Order; and
    b. Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 8, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE